UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPIA TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>BOX, INC., et al.,<br><br>        Defendants. | Case No.  23-cv-00063-JSC<br><br>**ORDER RE: TOPIA'S MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 206 |

Topia Technology, Inc. ("Topia") sues Box, Inc. ("Box") for infringement of U.S. Patent No. 10,289,607 ("the '607 patent"); U.S. Patent No. 10,642,787 ("the '787 patent"); U.S. Patent No. 10,754,823 ("the '823 patent"); and U.S. Patent No. 11,003,622 ("the '622 patent").  (Dkt. No. 48.)[1]  Topia's complaint also asserted infringement of U.S. Patent No. 9,143,561 ("the '561 patent") and U.S. Patent No. 10,067,942 ("the '942 patent"), but the asserted claims have since been invalidated by the Patent Trial and Appeal Board ("PTAB") in an *inter partes review* ("IPR").  (*Id.*; Dkt. No. 138 at 2.)  In October 2025, the Court issued its claim construction order.  (Dkt. No. 193.)  Now pending before the Court is Topia's motion for reconsideration of the Court's claim construction order.  (Dkt. No. 206.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on January 7, 2026, the Court DENIES Topia's motion.

As an initial matter, because Topia did not "present[] to the Court" the facts or arguments it now raises prior to the Court's claim construction order, Topia has not justified its motion for reconsideration.  *See* N.D. Cal. Civ. L.R. 7-9(b)(3).  Nevertheless, Topia's statements during the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

IPR proceedings for the '607 and '622 patents constituted prosecution history disclaimer because the statements were a "clear and unmistakable disclaimer of any client request during the transfer process." (Dkt. No. 193 at 23.) Furthermore, judicial estoppel remains inappropriate because Box's assertion of a broader construction of "automatically" in the IPR proceedings for the '561 and '942 patents—i.e., that "automatically" should be construed in light of its plain and ordinary meaning—is not clearly inconsistent with its present argument the scope of "automatically" should be narrowed in light of Topia's prosecution history disclaimer.

## BACKGROUND

### I.    OVERVIEW OF THE ASSERTED PATENTS

The '607 and '622 patents are titled "Architecture for Management of Digital Files Across Distributed Network," (Dkt. Nos. 49-3 ('607 patent); 49-6 ('622 patent)), the '787 patent is titled "Pre-File-Transfer Update Based on Prioritized Metadata," (Dkt. No. 49-4), and the '823 patent is titled "Pre-File Transfer Availability Indication Based on Prioritized Metadata," (Dkt. No. 49-5). All four asserted patents "relate[] generally to computer-implemented processes and, more specifically, to sharing of electronic files among computer systems." (Dkt. Nos. 49-3, 49-4, 49-5, 49-6 ("Field of the Invention").)

The '607 and '622 patents' abstracts describe the automatic transfer of files from one device to another responsive to a user modifying the file:

> In certain embodiments, automatic modification-triggered transfer of a file among two or more computer systems associated with a user. In some embodiments, a copy of a first file may be received, via a first application at a first computer system, from a second application at a second computer system associated with a user. The first file copy may be automatically received from the second application responsive to the user modifying a content of the first file, where the first file copy is a version of the first file that is generated from the user modifying the content of the first file. Responsive to receiving the first file copy from the second computer system, the first file copy may be automatically transferred via the first application to a third computer system associated with the user to replace an older version of the first file stored on the third computer system.

'607 patent, (57); '622 patent, (57). In addition to the automatic file transfer discussed above, the '787 and '823 patents' abstracts further elaborate on a method for notifying the user of an updated file version based on transfer of the file's metadata prior to transfer of the document itself:

> After receiving metadata associated with the updated version of the file from the first client device, the server system may automatically transfer the metadata to a second client device associated with the user such that, before the file copy is transferred to the second client device, the transfer of the metadata to the second client device causes a graphical availability indication of the updated version of the file to be presented (e.g., proximate a file icon representing the file) at the second client device based on the metadata.

'823 patent, (57); '787 patent, (57) (substantially the same content).

In essence, the patents aim to enable file management and synchronization across multiple devices without requiring users to manually move files between devices. To accomplish this, all patents claim a server system that automatically synchronizes files between devices responsive to a user modifying the files. '607 patent, 10:58-11:25; '622 patent, 10:60-11:24; '787 patent, 11:9-55; '823 patent, 11:11-61. When a user modifies a file on a first device, the server automatically receives the file and the metadata associated with the file. *See, e.g.*, '607 patent, 10:61-67. The server then automatically transfers the file metadata, followed by the file itself, to the second device where it replaces the old file version. *Id.* at 11:13-18. Because the synchronization process is lengthy, prioritizing transfer of the metadata allows the second device to reflect the existence of an updated file, via the transferred metadata, prior to the completed download of the updated file. All asserted patents are in the same family and share an identical specification.

## II. PROCEDURAL HISTORY

In December 2021, Topia sued Box in the Western District of Texas. (Dkt. No. 1.) The parties completed claim construction briefing. (Dkt. Nos. 47, 52, 54, 59, 74.) On January 6, 2023, the Western District of Texas granted Box's motion to transfer the case to this Court. (Dkt. Nos. 44, 76.) Although Topia asked to proceed immediately to claim construction, the Court instead directed Topia to file infringement contentions which complied with this District's local rules. (Dkt. Nos. 106, 109, 115.)

However, because Box had in January 2023 filed IPR petitions against all Topia's asserted patents, on May 12, 2023, the Court granted Box's motion to stay the case. (Dkt. No. 131.) In August 2023, the PTAB denied institution on the '607, '787, '823, and '622 patents and instituted IPR on the '561 and '942 patents. (Dkt. No. 133 at 2.) The PTAB subsequently invalidated all

United States District Court
Northern District of California

challenged claims of the '561 and '942 patents; Topia is pursuing appeals of both decisions. (Dkt. No. 138 at 2.) So, on December 4, 2024, the Court lifted the stay and allowed the case to proceed as to the four patents on which IPR had not been instituted. (Dkt. No. 149.)[2]

### A.    Claim Construction Order

After lifting the stay, the Court issued a scheduling order for claim construction briefing and argument. (Dkt. No. 159.) Following a September 12, 2025 *Markman* hearing, the Court issued its claim construction order on four disputed terms. (Dkt. Nos. 186, 193.) As relevant to Topia's present motion, the parties disputed the term "automatically transfer" / "automatically transferring" in the '607, '787, '823, and '622 patents ("Term 2"). (Dkt. No. 193 at 1.) Box proposed construing "automatically transfer" as "push without any request from a client," and "automatically transferring" as "pushing without any request from a client." (*Id.* at 19.) Topia responded the term required no further construction and "should be given its plain and ordinary meaning, e.g., . . . the server system or the first computer system [not the second client device] initiates the transfer." (*Id.*)

The Court first explained why Topia's prior statements in IPR proceedings "disclaimed the full scope of 'automatically transfer'" and "support[ed] Box's proposed construction of 'automatically transfer' as meaning 'push without any request from a client.'" (*Id.* at 20.) *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009) ("A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he would otherwise have an exclusive right by virtue of the claim language."). In its Patent Owner Preliminary Responses ("POPRs"), Topia had made statements to the PTAB regarding the phrase "automatically transfer" to distinguish the Brown prior art reference (U.S. Patent No. 7,035,847) and the Sigurdsson prior art reference (U.S. Pub. Patent App. 2007/0174246A1). (Dkt. No. 193 at 21 (citing Dkt. No. 174-6 at 55-56, 67; Dkt. No. 174-7 at 57-

---

[2] Additionally, in the District of Delaware, Topia sued Egnyte, Inc. for infringement of the same patents at issue in this case. *See Topia Tech., Inc. v. Egnyte, Inc.*, No. 21-CV-01821-CJB (D. Del. filed Dec. 27, 2021). On July 11, 2025, the Delaware court granted Egnyte's motion for summary judgment of non-infringement. (Dkt. No. 178-2.) Topia has filed a motion for reargument which remains pending. (Dkt. No. 182-1.)

58, 67-68; Dkt. No. 174-8 at 55-56, 65-67; Dkt. No. 174-9 at 55-56, 65-67).)  First, in distinguishing the '607 patent from Brown, "Topia stated Brown did not 'teach[] a server system automatically transferring'" because Brown's file synchronization "'must be initiated by the client request to the server,'" whereas the '607 patent requires that "'the server transfers the file on its own without a request from a client.'"  (*Id.* (quoting Dkt. No. 174-6 at 62-63).)  Topia made "substantially similar statements" during the POPR for the '622 patent.  (*Id.* (citing Dkt. No. 174-7 at 63-64).)  Topia also distinguished the Brown and Sigurdsson patents "on the ground both references taught 'a HTTP server' which 'does not perform functions "automatically" without client requests,'" so the Brown and Sigurdsson protocol "does not support a 'functionality where the server can automatically send data to a client without the client making requests for data.'" (*Id.* at 22 (quoting Dkt. No. 174-6 at 55, 66).)  The Court therefore rejected Topia's arguments its statements only disclaimed a client request initiating the file transfer and found "Topia's statements act as a clear and unmistakable disclaimer of any client request during the transfer process."  (*Id.* at 23.)

Topia also argued "judicial estoppel prohibits Box from asserting an inconsistent claim construction position." (*Id.*)  *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (explaining courts evaluating judicial estoppel consider: (1) whether a party's later position is "'clearly inconsistent' with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" (citations omitted)).  Specifically, during the IPR proceedings for the '561 patent, Box had proposed a broad construction of "automatically transfer": "not transferred 'manually by a human user from one device to another." (Dkt. No. 193 at 23-24 (quoting Dkt. No. 177-17 at 14).)

Although Box's current construction differed from its prior construction in the IPR proceedings, the Court found Box had changed its position based on Topia's disclaimer, "giv[ing] rise to 'a different dispute concerning the claim terms'—whether Topia limited the scope of its

claims during the IPR proceedings, not whether the asserted claims are valid." (*Id.* at 24 (quoting *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1291 (Fed. Cir. 2009)).) Furthermore, the Court found Box did not have an opportunity to propose claim constructions in response to Topia's disclaimer in prior proceedings because the statements were made in May 2023, after the Western District of Texas's *Markman* briefing and the filing of the IPR petitions, and—as to the '561 IPR proceedings—because "'a disclaimer is not binding on the PTO in the very IPR proceeding in which it is made.'" (*Id.* at 24-25 (quoting *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1383 (Fed. Cir. 2022)).) So, Box's current position was not "clearly inconsistent" with its previous position. (*Id.* at 24.)

The Court further explained Box "does not gain an unfair advantage" because "Box's changing construction reflects a changing intrinsic record, not gamesmanship." (*Id.* at 25.) In addition, Topia "does not suffer an unfair detriment" because "'[t]he public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.'" (*Id.* (quoting *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003)).) So, the Court found "[t]he unfairness factor also weighs against judicial estoppel." (*Id.*)

The Court therefore adopted Box's proposed construction of "automatically transfer" and "automatically transferring" to mean "push without any request from the client" and "pushing without any request from the client." (*Id.*) Topia then moved for leave to file a motion for reconsideration of the claim construction order as to Term 2 because: "(1) the finding of prosecution disclaimer rests on an incomplete record, including critical admissions Box made in the related '561 and '942 IPRs showing how a person of ordinary skill in the art would have understood Topia's statements; and (2) misapplication of *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376 (Fed. Cir. 2022) in finding that equities do not favor estoppel." (Dkt. No. 196 at 3 (citing N.D. Cal. Civ. L.R. 7-9(b)(3)).) The Court noted "[w]hile these statements were contained in the prosecution history provided to the Court, they were not presented to the Court by either party." (Dkt. No. 200 at 2.) However, because the Court had not considered such facts, it granted Topia's motion. (*Id.*)

Topia now moves for reconsideration of the claim construction order.  (Dkt. No. 206.)

**DISCUSSION**

A district court retains jurisdiction to "reconsider its prior rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (citation omitted); *see also* N.D. Cal. Civ. L.R. 9-7(a) (allowing parties to seek leave to move for reconsideration until entry of final judgment); Fed. R. Civ. P. 54(b) (explaining non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").  In patent cases, "a district court may engage in claim construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[D]istrict courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'" (citation omitted)).

However, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quotation marks and citation omitted).  So, "[a] motion for reconsideration is not a vehicle for perpetually relitigating the Court's rulings, or a substitute for appeal." *Hamzeh v. Pharmavite LLC*, No. 24-CV-00472-HSG, 2025 WL 1810082, at *1 (N.D. Cal. July 1, 2025) (quotation marks and citation omitted).  Instead, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citing Fed. R. Civ. P. 59(e)).

## I.    GROUNDS FOR RECONSIDERATION

As an initial matter, Box asks the Court to deny Topia's motion for reconsideration because Topia has not demonstrated grounds to file such a motion.  Under Local Rule 7-9(b), a party moving for leave to file a motion for reconsideration must show: (1) "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought"; (2) "[t]he emergence of new material facts or a change

United States District Court
Northern District of California

7

of law occurring after the time of such order; or (3) [a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." N.D. Cal. Civ. L.R. 7-9(b). But a "court has broad discretion to reconsider and revise its prior orders." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1048 (N.D. Cal. 2015).

The Court granted Topia leave to file its reconsideration motion under Local Rule 7-9(b)(3) because its claim construction order "did not consider": (1) Box's statement in the IPR proceedings for the '561 and '942 IPR proceedings that Topia "'does not attempt to argue any disclaimer, disavowal, or lexicography that would exclude "automatic" transfers that occur in response to communications between devices,'" (Dkt. No. 200 at 2 (citing Dkt. No. 177-17 at 15; Dkt. No. 142-3 at 26-27), or (2) whether Box made such statement "***after*** any alleged disclaimer arising from Topia's statements in the four IPRs at issue ('607, '622, '787, and '823) would have become binding on subsequent proceedings before the PTO," (*id.* (citing Dkt. No. 133; Dkt. No. 177-17)). However, although such facts were "contained in the prosecution history provided to the Court," neither party cited them in their claim construction briefing or argument. (*Id.*) "It is not the Court's duty [] to peruse the record to formulate the parties' arguments." *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 440 (9th Cir. 2020) (citing *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")). So, as such facts and arguments "were not presented to the Court by either party" before its claim construction order, (Dkt. No. 200 at 2), Topia has not shown grounds for its reconsideration motion. *See* N.D. Cal. Civ. L.R. 7-9(b)(3) (requiring party moving for reconsideration to show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments ***which were presented to the Court before such interlocutory order***" (emphasis added)). So, for this reason, alone, the Court DENIES the motion for reconsideration.

Nevertheless, for the sake of completeness, the Court addresses Topia's new arguments. However, the Court will not address arguments about Topia's own disclaiming statements or the propriety of judicial estoppel which the Court's claim construction order has already considered and rejected. *See Hamzeh*, 2025 WL 1810082, at *1 ("The moving party may not 'repeat any oral

or written argument' articulated for or against the interlocutory order in question." (quoting N.D. Cal. Civ. L.R 7-9(c))).

## II.    ARGUMENTS FOR RECONSIDERATION

Topia challenges the Court's application of prosecution disclaimer to the construction of "automatically transfer." Topia argues:

> (1) in finding disclaimer, the Order did not consider Box's critical admission in related family member IPRs that a person of ordinary skill in the art ('POSA') would not have understood Topia's statements as a disclaimer, and
> (2) in deciding that the equities do not favor estoppel, the Order misapplied *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376 (Fed. Cir. 2022), and misunderstood the date at which any alleged disclaimer from Topia's statements would have arisen.

(Dkt. No. 206 at 6.)

### A.    Box's Admission and Topia's Disclaimer

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. . . . There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.

*Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citations omitted). "[A] party wishing to alter the plain meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one [and] demonstrat[e] why such alteration is required." *K-2 Corp. v. Saloman S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) (citation omitted); *see also Pelican Int'l, Inc. v. Hobie Cat Co.*, No. 3:20-CV-02390-RSH-MSB, 2023 WL 2127994, at *8 n.7 (S.D. Cal. Feb. 10, 2023) ("[T]he party seeking to impose that specific limitation [] bore the burden of raising that issue at claim construction.").

During the post-institution IPR proceedings for the '561 patent, Box argued for a construction of "automatically" consistent with its plain and ordinary meaning to mean "files are transferred 'automatically' by a system as opposed to being transferred 'manually' by a human user from one device to another." (Dkt. No. 180-4 at 27 (citation omitted).) Topia contended "automatically" transferring a file "means to push the file without any request from the client."

(Dkt. No. 208 at 8 (citing Dkt. No. 208-2 at 21-22, 26, 45; Dkt. No. 208-3 at 20, 24, 29, 43)).)  In its reply in support of its IPR petition for the '561 patent, Box wrote:

> The patent uses the term "automatically" with its plain and ordinary meaning to indicate that files are transferred "automatically" by a system as opposed to being transferred "manually" by a human user from one device to another. . . .  The patent distinguishes prior art where users "must ***manually move files*** between their devices" versus the claimed invention where files are transferred "***automatically***." . . . . Nothing in the claims or specification requires file transfer that is automatic "from the perspective of the server" in the extremely narrow sense [Topia] assumes—unilaterally initiated by the server without receiving any communication from another device. . . . [Topia] does not attempt to argue any disclaimer, disavowal, or lexicography that would exclude "automatic" transfers that occur in response to communications between devices. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

(Dkt. No. 177-17 at 14-15 (record citations omitted).)  In its final written decisions for the IPRs on the '561 and '942 patents, the PTAB agreed with Box and explained:

> [Box] responds that [Topia's] construction of "automatically" in limitation 1d (and corresponding limitation 10c) is "erroneously narrow." . . . Referring to the '942 patent specification, [Box] asserts that "[t]he patent uses the term 'automatically' with its plain and ordinary meaning to indicate that files are transferred 'automatically' by a system as opposed to being transferred 'manually' by a human user from one device to another." . . . In further support of this construction, [Box] points to several instances where the specification contrasts manual operations (e.g., moving or transferring files) with automatic operations. . . . Embracing [Topia's] description of the claims as "user-centric," [Box] contends "[n]othing in the claims or specification requires file transfer that is automatic 'from the perspective of the server' in the extremely narrow sense [Topia] assumes—unilaterally initiated by the server without receiving any communication from another device." . . . Neither of the independent claims expressly recites a server.  [Box] argues that [Topia] "does not attempt to argue any disclaimer, disavowal, or lexicography that would exclude 'automatic' transfers that occur in response to communications between devices." *Id.* (citing *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012)).  We agree with [Box] that the language of the claims does not limit transfers to those that are automatic "from the perspective of the server," that is, unilaterally initiated without receiving communication from another device. . . . As [Box] explains, "[t]he ['942] patent's only use of the word 'automatically' in the detailed description of the preferred embodiment reflects this user-centric perspective."

(Dkt. No. 142-3 at 26-27 ('942 patent) (record citations omitted); Dkt. No. 180-4 at 27-28 ('561 patent) (record citations omitted).)

Although Topia did not raise the argument in its claim construction briefing, Topia now argues Box's statements to the PTAB in the instituted IPR proceedings for the '561 and '942 patents means Topia's statements in the '607 and '622 IPRs—which the Court relied on in finding prosecution disclaimer—do not rise to the level of prosecution disclaimer for purposes of this infringement action; so, the Court erred in applying prosecution disclaimer.  In particular, Topia seizes on Box's statement in its reply in support of its IPR petition for the '561 patent: "[Topia] does not attempt to argue any disclaimer, disavowal, or lexicography that would exclude 'automatic' transfers that occur in response to communications between devices," (Dkt. No. 177-17 at 15), as demonstrating Topia's statements in the '607 and '622 proceedings are "at a minimum, amenable to a reasonable alternative interpretation, namely no broad disclaimer."  (Dkt. No. 206 at 7.)  *See Genuine Enabling Tech. LLC v. Nintendo Co., Ltd.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) ("If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." (citation omitted)).

As an initial matter, Topia's argument is premised on a misrepresentation of the IPR record.  Box never stated during the instituted IPR proceedings for the '561 and '942 patents that Topia's POPRs for the IPR proceedings for the patents-in-suit do not constitute prosecution disclaimers for purposes of subsequent proceedings.  Under *Thorner v. Sony Computer Entertainment America LLC*, the word "automatically" would be given its "ordinary and customary meaning" unless Topia had "set[] out a definition and act[ed] as its own lexicographer," or "disavow[ed] the full scope of the claim term *either in the specification or during prosecution*."  *See Thorner*, 669 F.3d at 1365 (emphasis added).  So instead, citing *Thorner*, Box pointed out to the PTAB that Topia had not "attempt[ed] to argue any disclaimer, disavowal, or lexicography" which would warrant the PTAB's divergence from the "plain and ordinary meaning."  (Dkt. No. 177-17 at 15.)  It is apparent Box was referring to Topia's lack of an attempt at disavowal, disclaimer or lexicography *during patent prosecution*.  And Box had no reason to refer to the IPR proceedings for the patents-in-suit because neither Box nor Topia had identified them as relevant to claim construction in the instituted IPR proceedings for the '561 and '942 patents.  So, Box's statement in the instituted IPR proceedings for the '561 and '942 patents in no way suggests the

11

Court's finding of Topia's clear and unequivocal disclaimer during IPR for the patents-in-suit for purposes of this infringement action was erroneous.

Relatedly, Topia's argument is likely also premised on a misapplication of prosecution disclaimer. "The doctrine of prosecution disclaimer precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *CUPP Computing AS*, 53 F.4th at 1382 (quotation marks and citation omitted). In *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017), the Federal Circuit held "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Id.* at 1362. But Topia has cited no case—and conceded at oral argument it is aware of no case—in which a patentee has been permitted to narrow the construction of a claim term during an IPR based on arguments the patentee itself made during the same or even earlier IPRs. Instead, as the Federal Circuit explained in *CUPP Computing AS*:

> A rule permitting a patentee to tailor its claims in an IPR through argument alone would substantially undermine the IPR process. Congress designed inter partes review to giv[e] the Patent Office significant power to revisit and revise earlier patent grants, thus protect[ing] the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope. . . . If patentees could shapeshift their claims through argument in an IPR, they would frustrate the Patent Office's power to "revisit" the claims it granted, and require focus on claims the patentee now wishes it had secured.

53 F.4th at 1383 (quotation marks and citations omitted). Further, such a rule "would substantially undermine the IPR process" because "Congress created a specialized process for patentees to amend their claims in an IPR." *Id.* So, Topia likely could not have defeated an invalidity finding in the instituted IPR proceedings for the '561 and '942 patents by referring to its own statements made in the non-instituted IPR proceedings for the patents-in-suit. *See Image Processing Techs. LLC v. LG Elecs. Inc.*, No. 2023-2136, 2025 WL 323779, at * 5 (Fed. Cir. Jan. 29, 2025).

Furthermore, disclaimer depends on Topia's statements about its own patents. *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares

*United States District Court
Northern District of California*

during the prosecution of his patent."); *Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, 133 F.4th 1359, 1366 (Fed. Cir. 2025) ("Holding patentees to their definitive statements made during prosecution protects the public and promotes the notice function of intrinsic evidence.").  In contrast, Box's and the PTAB's evaluation or ignorance of Topia's statements are not dispositive. *See Springs Window Fashions LP*, 323 F.3d at 995 ("[T]he examiner's remarks do not negate the effect of the applicant's disclaimer."); *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1381 (Fed. Cir. 2021) ("We also disagree that there was no clear and unmistakable disclaimer merely because the *Wal-Mart* court and the patent office did not expressly find one."); *see also Iris Corp. Berhad v. United States*, 147 Fed. Cl. 160, 166 n.3 (Fed. Cl. 2020) (rejecting patentee's argument defendant's statements in an IPR petition constitute relevant intrinsic evidence for claim construction).  So, as Topia does not present any "material facts" related to its own statements about its patents "which were presented to" but not considered by the Court in its claim construction order, Topia has not shown it is entitled to reconsideration of the Court's finding of disclaimer.  *See* N.D. Cal. Civ. L.R. 7-9(b)(3).

Finally, at the January 7, 2026 oral argument, Topia insisted the application of prosecution disclaimer based on its '607 and '622 IPR proceedings' statements was erroneous in light of *Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1010-11 (Fed. Cir. 2020). This argument fails at the outset given Topia did not make it until its reply memorandum in support of its motion for reconsideration.  It did not cite the case in its claim construction briefing, in its motion for leave to file a motion for reconsideration, or in its motion for reconsideration. (Dkt. Nos. 177, 180, 196, 206.)   For this reason, alone, the argument fails.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief." (citation omitted)).

Nevertheless, Topia's argument also fails on the merits. *Galderma Laboratories, L.P.* held a patent owner's statements during an IPR did not constitute prosecution disclaimer because there was "no doubt" the PTAB rejected the patent owner's attempt to narrow a claim's construction. *See* 806 F. App'x at 1010; *see also id.* at 1010-11 ("While clear and limiting statements made by the patent owner can give rise to disclaimer, they do not in [a] case where those statements were

United States District Court
Northern District of California

clearly and expressly rejected by the Patent Office.").  Following the IPR proceedings for the '607 and '622 patents in which Topia made the disclaiming statements, however, the PTAB never rejected Topia's attempt to narrow the claim's construction to avoid prior art.  To the contrary, according to the parties, the PTAB declined institution without comment.  (*See also* Dkt. No. 133 at 2.)  So, if anything, the record reflects the PTAB accepted Topia's disclaimer and therefore declined to institute invalidity proceedings for the '607 and '622 patents.

                                            ***

For all the above reasons, the Court denies Topia's motion for reconsideration of its claim construction order on the ground its finding of Topia's disclaimer was incorrect.

### B.    Judicial Estoppel and Application of *CUPP Computing AS*

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotation marks and citation omitted).  Courts evaluating whether to apply judicial estoppel consider (1) whether a party's later position is "'clearly inconsistent' with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id.* at 750-51.

At claim construction, Topia asserted judicial estoppel prohibited Box from proposing a construction of "automatic transfer" as a "push without any request from a client" before this Court when Box had persuaded the PTAB in the '561 IPR proceedings to construe the term as "not transferred 'manually' by a human user from one device to another."  (Dkt. No. 193 at 23-24 (citing Dkt. No. 169-2 at 1; Dkt. No. 177-17 at 14).)  The Court held "application of judicial estoppel is inappropriate because Box's current position is not 'clearly inconsistent' with its previous position and any inconsistencies would not be unfair."  (*Id.* at 24.)  Now, in seeking reconsideration, Topia contends "in deciding that the equities do not favor estoppel, the [Court] misapplied *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376 (Fed. Cir. 2022), and

misunderstood the date at which any alleged disclaimer from Topia's statements would have arisen." (Dkt. No. 206 at 6.)

For the reasons explained above, the Court did not misapply *CUPP Computing AS*. The Court's claim construction order noted neither party could have used Topia's disclaiming statements from the non-instituted IPR proceedings for the '607 and '622 patents to narrow the scope of the claims during the instituted IPR proceedings for the '561 and '942 patents. (Dkt. No. 193 at 24-25 (citing *CUPP Computing AS*, 53 F.4th at 1383 ("[A] disclaimer is not binding on the PTO in the very IPR proceeding in which it is made.")).) Topia now argues once the PTAB denied institution on the '607 and '622 patents and granted institution on the '561 and '942 patents, any disclaiming statements Topia made in response to the IPR petitions for the '607 and '622 patents became binding on the subsequent IPR proceedings for the '561 and '942 patents. *See CUPP Computing AS*, 53 F.4th at 1383 ("[A] disclaimer in an IPR proceeding is binding in later proceedings, whether before the PTO or in court."). But *CUPP Computing AS* held "a disclaimer is not binding on the PTO in the very IPR proceeding in which it is made" because "[a] rule permitting a patentee to tailor its claims in an IPR through argument alone would substantially undermine the IPR process." *See id.* So, it would make no sense to hold a patentee cannot narrow its claim in an IPR through argument alone, but that once that IPR is complete, that same "argument alone" is binding on the PTAB in a subsequent related IPR. The IPR process would still be substantially undermined for all the reasons explained in *CUPP Computing AS*. That is no doubt why Topia cannot cite any authority holding otherwise. This Court declines to be the first.

Nevertheless, even accepting Topia's proposed application of *CUPP Computing AS*, Box's statements are not clearly inconsistent. In the IPR proceedings for the '561 and '942 patents, Box argued the patent used the "plain and ordinary meaning" of "automatically" transfer, namely, not "manually" transfer, and Topia did not argue disclaimer justified its narrower construction. (Dkt. No. 177-17 at 14-15.) Box does not now argue the plain and ordinary meaning of "automatically transfer" has changed so as to "directly contradict[]" its prior construction. *See United States v. Castillo-Basa*, 483 F.3d 890, 898 n.5 (9th Cir. 2007). Instead, Box argues Topia has narrowed the term's construction beyond its plain and ordinary meaning by disclaiming certain claim scope in

15

the IPR proceedings on the patents-in-suit.  Further, as explained above, Box did not argue to the PTAB Topia had not made any disclaimer during the IPR proceedings on the patents-in-suit; rather, Box argued Topia had failed to assert any disclaimer during patent prosecution in support of its narrower construction.  So, as the Court held in its claim construction order, "the addition of Topia's IPR statements to the intrinsic record give rise to 'a different dispute concerning the claim terms'—whether Topia limited the scope of its claims during the IPR proceedings, not whether the asserted claims are valid." (Dkt. No. 193 at 24 (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1291 (Fed. Cir. 2005)).)  Because Topia has not shown Box's statements are clearly inconsistent, Topa has not raised a "dispositive legal argument[]" or "clear error" to warrant reconsideration.  *See* N.D. Cal. Civ. L.R. 7-9(b)(3); *389 Orange St. Partners*, 179 F.3d at 665.

Furthermore, if Topia wanted its disclaimer from the non-instituted IPR to bind the PTAB in the instituted IPRs for the '561 and '942 patents, Topia—as the party seeking to limit the claim's scope—"bore the burden of raising that issue." *See Pelican Int'l, Inc.*, 2023 WL 2127994, at *8 n.7.  Even if Box "*could have* asserted that narrow claim construction . . . to the PTAB and later to the Federal Circuit in the '561 and '942 IPRs," Box had no obligation to do so.  (Dkt. No. 206 at 8.)  So, the Court reaffirms its conclusion Box's positions are not clearly inconsistent.

Topia also argues "[a]llowing Box to prevail with an inconsistent narrow construction now, merely because its interests have shifted, would be unjust and inequitable" because Box previously "secured invalidity of two patents through a broad construction of 'not manual,' yet now attempts to avoid infringement of the remaining four patents with a narrow interpretation." (Dkt. No. 206 at 7.)  As an initial matter, Topia presents no authority contradicting the Court's prior conclusion "Topia does not suffer an unfair detriment" by being "'held to what [it] declare[d] during the prosecution of [its] patent.'" (Dkt. No. 193 at 25 (quoting *Springs Window Fashions LP*, 323 F.3d at 995).)  And, as the Court held in its claim construction order, "Box does not gain an unfair advantage" by "changing [its] construction [to] reflect[] a changing intrinsic record." (Dkt. No. 193 at 25.)  Topia contends Box derives an unfair advantage by proposing a narrower construction, but it does not cite any case involving a defendant raising the patentee's own

16

disclaiming statements in later proceedings to justify a narrower scope. *See Intel Corp. v. XMTT, Inc.*, No. 2021-2127, 2022 WL 1152312, at *1 (Fed. Cir. Apr. 19, 2022) (estopping Intel from changing its previously adopted construction on appeal from the PTAB); *Trs. of Columbia Univ. in N.Y. v. NortonLifeLock, Inc.*, No. 3:13-CV-808, 2019 WL 7040931, at *6 (E.D. Va. Dec. 20, 2019) (estopping Norton from changing construction merely because "its interests have changed"); *Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*, No. 07-CV-02261-PAB, 2011 WL 5075619, at *6 (D. Colo. Oct. 25, 2011) (estopping patentee from adopting position inconsistent from that used to obtain related patent); *see also Fitness Quest Inc. v. Monti*, 560 F. Supp. 2d 598, 606 (N.D. Ohio 2008), *vacated in part*, 330 F. App'x 904, 913 (Fed. Cir. 2009) ("[T]he district court erred by applying judicial estoppel in this situation.").

So, the Court denies Topia's motion for reconsideration of its claim construction order on the grounds the Court incorrectly declined to apply judicial estoppel.

**CONCLUSION**

For the reasons stated above, the Court DENIES Topia's motion for reconsideration of its claim construction order. "Based on Topia's statements during the IPR proceedings, . . . "'automatically transfer' and 'automatically transferring' [] mean[s] 'push without any request from the client' and pushing without any request from the client.'" (Dkt. No. 193 at 25.)

The Court will hold a further case management conference on March 11, 2026 at 2:00 p.m. via Zoom video. An updated further case management conference statement is due one week in advance.

This Order disposes of Docket No. 206.

**IT IS SO ORDERED.**

Dated: February 5, 2026

JACQUELINE SCOTT CORLEY
United States District Judge